Crabb, J.
delivered the opinion of the court. On opening the record in this cause, we were disposed, to consider this question as settled by the course of previous decisions. But, as the counsel concerned disagree as to the character of those decisions, and as we are so unfortunate to be without the means of ascertaining in this instance, as in many others, what has been decided by our predecessors, we have determined to treat it as an open question, and to give an unequivocal expression of our opinion upon it. Regarding it as such, but having at the same time a view to the peculiarities of our local jurisprudence, let us see what is the true construction of Jones’s grant, that being the principal question submitted.
Two acts of assembly of North Carolina, that of 1777, ch. 1, sec. 10, and 1784, ch. 15, sec. 3, have been relied on as *69 showing that it was unlawful for the surveyor to cross the river, or to include lands on both sides of it, in one survey. The act of 1777, contains provisions applicable to, and tended to affect alone the eastern part of North Carolina. But the general assembly manifested 'their indisposition to apply its provisions, in extenso, to the military reservation by the very section of the act of 1784, which was cited.
By prohibiting the extension of surveys of less than one thousand acres, across all the streams navigable by bat-teaux, they impliedly sanction the crossing of them in making larger surveys; and reasons for such distinction are very obvious. Small surveys could be so'made, as to appropriate an undue proportion of the river bottoms; but as the tract increases in size, so does the danger of disproportion in that respect diminish — for the survey cannot exceed in length an oblong, and the lines must be run to the cardinal points. A large survey could not well be extended up and down our crooked rivers, adhering to these' rules, without-including a due proportion of hills. No plausible argument can be founded upon the supposed unwillingness of the general assembly, to suffer the appropriation of a navigable stream as private property. What injury could this do to the public? The right of soil being in a private individual, does not render the running water less subject to public disposition as a public easement. All navigable rivers of every class, are either de facto, or are rendered de jure public highways. (19 Viner, title river; 3d Bac. Abr. title highway A.) The right to the soil, over which highways Or land paths are, is generally vested-in individuals — yet the public have a right of passage over the soil, which the owner can no more infringe, than any other person; and so it is of every navigable river. The right is founded upon i he law of nature.
TJsus communis aquarum est; nec solam propriam natura, nec aera facit, nec tenues undas.
But in determining upon the meaning and operation of this grant, we need not have stopped to inquire, whether the acts of assembly prohibited the surveyor from crossing the river, or the other officers of the state from granting *70 lands on both sides of it? as it is agreed on all hands that those acts were at furthest merely directory; and that if the state has actually granted the land on the north side, the patent would not be void.
Let }3e borne in mind then, that we are construing a grant, the evidence of legal title; that our sole object is to ascertain, in technical language, identity; and that to give the grant this identity or locality, we must have boundary — wc must have lines; and to draw those lines, we must have a point at which those lines are to begin and end. Those calls then in the grant, which serve to fix this boundary, or these lines and points of beginning and ending, are certainly of more importance to the existence and effect of the present, than any call which professes only to throw the whole tract or body of the land into one part of the country or another, on one stream or another, or one or the other side of a creek or river. The grant will operate without the latter species of calls, or the existence of the objects embraced in them. But no grant could subsist, which lacked the support of the former sort of calls and objects. Iiow much efficacy would a grant possess, which depended for its operation on an unaided call for the south side of Cumberland river? But on the other hand, if a grant has a call for a beginning which is proved, and course and distance from it, it is wholly independent of the assistance of all other calls.
The doctrine which concedes the priority to calls for natural, and therefore permanent objects, over mere calls for course and distance, has been misapplied in argument. It is not properly used to impart more weight to mere general or directory calls, than to locative or special calls. To be more explicit: A grant is to begin at the presbyterian church in Nashville, and to run north one hundred poles to the French-lick branch; — now, although it be much farther than one hundred poles to the branch, the distance is disregarded, and the line continued to the object called for, the call for distance yields to that for the natural object— they are both locative calls. But take the case of a grant calling to lie on the French-lick branch, or on the north side *71 of said branch, beginning at the presbyterian church, running thence north one hundred poles, thence to the river, thence up the river one hundred poles, thence to the beginning. Runout the land according to course and tance, and it will all be entirely south of the branch called for. Yet will any one contend, that the survey would be extended beyond the branch, or farther than the distance called for by force of the call for the natural object? Here the call for the natural object, yields to the call for course and distance: because the latter is a special call, intended to designate boundary, about which the contracting parties are presumed to be particular; the former is merely a directory call, intended to lead to the neighborhood of the place, but making no pretensions to precise accuracy.
The case supposed, is in principle the same as the one before the court. If a generál call would not have the effect to carry the surveyor beyond the distance called for, why should it operate to restrict him to a shorter distance? The answer, on the part of the plaintiff in error, would be, that the case put, differs from the one under consideration in this, that the supposed case assumes a beginning on a different side from that where the land is called to lie. True it does, but although it may on that account present the principle in bolder relief, we do not see but that the same principle applies in both cases.
Thus much in reference to some of the considerations which have induced our courts to give a predominating influence, to what they have termed, the special or location calls of a patent, over those which they have denominated its general or directory calls.
When calls of different characters come in conflict, and both cannot be complied with, should we not disregard that which was not calculated, and was probably not intended, to give an accurate or precise description of the spot to be covered by the grant, than to reject that which had a tendency, and was 'designed, to fix the spot in question with precision? Únless the northern boundary line be extended across the river, the distance called for, we are at a loss to see upon what principle* such boundary shall be selected. *72 Where shall the surveyor go when he arrives at the river? gj^jj jje SUpply his distance by proceeding down the meanders of the river? If so, he will terminate the boundary very little, if any, more westwardly, than when he arrived at that point. The survey, in either event, would present a novel aspect, and would contain but little more than half the number of acres contemplated. Or shall he ascertain the point where the western boundary will cross the river, continue from the end of the northern boundary, if extended, six hundred and forty poles, and run thence to the beginning? Upon what principle can he do so? not upon the principle of reversing the calls of the grant, and surveying backward; for this mode, although often contended for, is not known ever to have prevailed. The conclusion is, that he must survey according to course and distance.
W e have unfeigned respect for those of our predecessors, who are said to have come to a different conclusion on this question, from that at which we have arrived. Such is the frailty of human memories, however, that we do not place the utmost reliance on those even which are most tenacious, when unassisted by written evidence, as to the distances and other peculiarities of a judicial opinion, delivered some time past. Wc must be permitted to say, that we are satisfied, and being so, it would ill become this court to pass over what is certainly the principal question on this record, and probably the only material one in the cause, on the ground that there are other minor points, on which the judgment might be rendered. We hold it to be as much the duty of a court, to decide a material question presented to them by the record, and on which they are able to form an opinion, as it is to abstain from a decision of one that is not before them; or as it is to give no decision in any case, until they are satisfied of its correctness.
We are satisfied, as the facts are presented to us upon this record, that the northern boundary of the 3840 acre tract, ought to be extended beyond the river the number of poles called for in the grant; and that, therefore, the lessor of the plaintiff has no title to that part of the land in controversy, covered by the grant of Jones thus run out.
*73 We are also satisfied, that the plat attached to the grant, was properly admitted as evidence on the trial below, is unnecessary to determine, in this case, whether the plat attached to the grant, will, like an actual survey, control the calls of the grant. But being made out by the survey- or, as a representation of what it was his duty to do, and what he professed to do on the ground, it was certainly proper to be left to the jury, when there are discordant calls on the face of the grant, as evidence of what was the intention of the state, through her officer, as to locality. We should disregard many adjudications of our courts to say the contrary.
This opinion would seem to be decisive of the controversy, but still the judgment cannot properly be affirmed. We are not warranted in saying, that the jury have pronounced upon the fact, whether by running according to the courses and distances of Jones’s grant, the possession in dispute would be included. They were told by the judge, in substance, that even if Jones’s grant did not cover the possession, the act of limitations would protect the defendant; that he having a deed, would, if the land were granted to any one, have a deed founded upon a grant, within the meaning of the act of 1797. Now we wish to be distinctly understood, as intimating no opinion, as to the correctness of the abstract proposition advanced by the judge. All we say is, that it was an error in application to the facts of the case. For, unless Jones’s grant covered land on the north side of the river, neither did any one of the deeds — they all refer to it, and expressly convey the land which it included. There being, therefore, no deed, the question could not-arise.
In order that the only facts, necessary to be determined, may be left to a jury, under a charge from the judge, con- ■ formable to this opinion, without being embarrassed with inapplicable and useless inquiries, let the judgment be reversed and the cause remanded for a new trial.
Judgment reversed.